Billie Jo HODGE, Appellant,

v.

The STATE of Texas, Appellee.

No. 45381.

Court of Criminal Appeals of Texas.

Dec. 13, 1972.

Rehearing Denied Jan. 24, 1973.

David B. Fagg, Dallas, for appellant.

Henry Wade, Dist. Atty. and Catharine T. Hill, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the sale of cocaine, a narcotic drug. The punishment was assessed by the jury at ten years.

The record reflects that Fred Young who had been an undercover investigator for the Dallas Police Department for some fifteen days went to Clarence Street looking for someone. While there Willie Lee Williams, whom he did not know, asked him what he wanted. He replied that he wanted "jive," which meant heroin. Willie Lee replied that she had no heroin but did have "coke," which was cocaine. Officer Young agreed to buy and paid her $16.00 for two capsules. Willie Lee then told Billie Jo Hodge, the appellant, to give Young two capsules. Billie Jo took out a Doan's pill container from somewhere on her person, shook out two capsules and handed them to Officer Young. It was later shown that the capsules contained cocaine.

All of the complaints of the appellant concern the closing argument of one of the prosecutors at the guilt stage of the trial. Counsel for the appellant had argued that the background of Officer Young did not make him a credible witness and the fact that the witness had been in Viet Nam and went to school for part of a semester did not add to his credibility. Counsel also attacked the credibility of the witness because he did not remember exact dates of employment or when he was in the military service. He also told the jury that Officer Young had been on the police force some fifteen days and that his employment depended on his ability to make arrests and to cause cases to be filed.

All of the arguments complained of were made by the prosecutor John Stauffer. The first of such arguments was:

"Now, I don't care—I told you on voir dire—how they catch them. I don't care if they've got to hang out on a tree to catch them as long as they stop the likes of her from distributing it out here to young colored men who might want to buy it, or to high school students or anybody else."

The court then sustained an objection and instructed the jury to disregard the last statement and not consider it for any purpose. Officer Young had testified that he was twenty-five years of age and that another colored man named Slim who was also twenty-five years of age was with him when he made the purchase.

The next argument complained of was after the expression by the prosecutor that he was thankful for having young men like

Officer Young to come forward and put on a uniform, and

"Ladies and gentlemen, I tell you the day will come when you have to draft men to be police officers in the eight largest city of the United States. You mark my words. You will certainly have to draft them to go out there and expose their throats to getting cut by the narcotics syndicate."

An objection to this argument was sustained.

Next, Mr. Stauffer argued:

" . . . He would like you to put the Dallas Police Department on trial. He says they don't look after their accounts—they ask for no accountability to the money they issue to him. Wouldn't they like to have the work product of the police? You see how all the way through this trial he wants to see our work product. He wants to see our notes. I always wonder why these defense lawyers here in Dallas County— why do they want to see the work product of the Police Department so bad? Why does he want to see where all he's spent that money, who all he's made buys from? But, they always want to get all of our papers out there and see—all of these defense lawyers are the same. I never saw one different."

An objection was sustained.

Next, the prosecutor argued:

" . . . She's guilty unless you don't want to believe Fred Young and if you can tell me any decent good reason not to believe that man, I wish you would save it and tell Chief Dyson about it. If you don't like the type of people that he attracts, that he is able to get— and how he gets them I don't know—to come into police work to give their life out here to the streets of Dallas, when

they don't know from one minute to the next—they don't know whether they're going to be—

"MR. HENDLEY: (Defense counsel) To which we object to the giving of their life."

The court sustained an objection to each argument and instructed the jury not to consider the last statement. In each instance a motion for mistrial was overruled.

Does either of the arguments complained of constitute reversible error?

The argument that he wanted to stop the appellant and her likes from selling to a young colored man or "high school students" was not a statement that appellant was selling to students. It would have been better had the prosecutor not mentioned high school students, because there was nothing in the evidence about sales to students.

We fail to see what danger police officers might face had to do with the facts of this case, and by the same token fail to see how injury to the appellant resulted from the statement. The argument that defense lawyers always wanted the work product of the police department was in part a comment on what occurred during the trial. Under certain circumstances defense lawyers are entitled to see statements made by officers for the purpose of cross-examination. There is nothing sinister about their wanting to see such statements for legitimate purposes. The statement that all defense lawyers were the same was in connection with the statement concerning the work product of the police department. The statement that all defense lawyers were the same should not have been made. It had nothing to do with the facts of this case.

The question as to whether either of the statements of counsel necessitates a reversal of the judgment is to be resolved

on the basis of the probable effect on the minds of the jurors and the facts of each case must be looked to. Jett v. State, Tex.Cr.App., 489 S.W.2d 101 (1972); Hess v. State, Tex.Cr.App., 328 S.W.2d 308.

■ An instruction by the court to the jury to disregard improper remarks of counsel is ordinarily held to overcome any harm or prejudice caused by the argument unless the remarks are so inflammatory that their prejudicial effect could not reasonably be removed by such an admonition. Hoover v. State, Tex.Cr.App., 449 S.W.2d 60. See 56 Tex.Jur.2d, Trial, Section 326, page 687. Under the facts and circumstances here shown, we hold that none of the argument was so inflammatory that its prejudicial effect could not be removed by the instruction given by the trial court. No reversible error has been shown.

■ One objection to an argument by the prosecutor was overruled. Such statement was, "I'm not saying she is Mafia, but I will tell you she was selling and hoping to sell—." This was in part a reasonable deduction from the evidence before the jury. However, there was no evidence about Mafia and counsel stated that he was not saying that she was one. There was no reason for such a statement. However, we hold this does not constitute reversible error.

■ Prosecutors are again admonished to stay within the record and not to discuss matters not in evidence. See Stearn v. State, Tex.Cr.App., 487 S.W.2d 734 (1972). This does not mean that proper pleas for law enforcement cannot be made. Counsel should not by innuendo refer to matters not properly before the jury.

No reversible error is shown. The judgment is affirmed.

ONION, P. J., and ODOM, J., dissent.