ACCEPTED
01-15-00342-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/7/2015 1:54:35 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00342-CR

_____

IN THE

COURT OF APPEALS

FOR THE

FIRST SUPREME JUDICIAL DISTRICT OF TEXAS

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

12/7/2015 1:54:35 PM

CHRISTOPHER A. PRINE
Clerk

_____

JAMES JESSE HUBBARD, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the District Court
of Galveston County, Texas
405th Judicial District
Cause No. 14CR0848

_____

FIRST AMENDED BRIEF FOR APPELLANT

_____

Greg Russell
711 59th Street
Galveston, Texas 77551
(409) 497-4743
(409) 497-4721
SBN: 17411550
ATTORNEY FOR APPELLANT

NO. 01-15-00342-CR

_____

IN THE

COURT OF APPEALS

FOR THE

FIRST SUPREME JUDICIAL DISTRICT OF TEXAS

HOUSTON, TEXAS

_____

JAMES JESSE HUBBARD, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the District Court
of Galveston County, Texas
405th Judicial District
Cause No. 14CR0848

_____

FIRST AMENDED BRIEF FOR APPELLANT

_____


Greg Russell
711 59th Street
Galveston, Texas 77551
(409) 497-4743
(409) 497-4721
SBN: 17411550
ATTORNEY FOR APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

Parties and counsel in this case are as follows:

1.     James Jesse Hubbard, Appellant, represented at trial by Adam Brown, 300 Main Street, Suite 200, Houston, Tx. 77573; represented on appeal by Greg Russell, 711 59th Street, Galveston, Tx. 77551.

2.     The State of Texas, Appellee, represented at trial by Chris Henderson and Matt Shawhan, Assistant District Attorneys and on appeal by Jack Roady, Criminal District Attorney for Galveston County, 600 59th Street, Galveston, Tx. 77551.

## CITATION TO THE RECORD

Clerk's Record ……………………………………… CR (page)

Clerk's Supplemental Record …………………….. CR Supp. (page)

Reporter's Record ……………………………. RR (volume & page)

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Index of Authorities ................................................................... | i - ii |
| Statement of the Case ......................................................……… | 1 |
| Issue Presented ..............................................................………. | 1 |
| Summary of Facts ..........................................................………. | 2 - 5 |
| Summary of Argument …………………………... ………......……. | 5 - 6 |
| Argument in Support of Appellant's Issue… ………................... | 6 - 19 |
| Conclusion and Prayer .......................................………. | 20 |
| Certificate of Service ................................................................. | 21 |
| Certificate of Compliance…………………………………………… | 21 |

# INDEX OF AUTHORITIES

CASES                                                          PAGE

Alejandro v. State, 493 S.W.2d 230 (Tex.Crim.App. 1973)………….. 17

Brown v. State, 475 S.W.2d 761 (Tex.Crim.App. 1972)……………… 17

Brown v. State, 866 S.W.2d 675, 678 (Tex. App.-Houston [1st Dist.]
1993, pet. ref'd) ……………………………….......................... 7

Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App.1984)……………… 10

Campbell v. State, 610 S.W.2d 754, 756 (Tex.Crim.App. 1980)…….. 12

Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed. 333 (1980)...6

Ex Parte Cruz, 739 S.W.2d at 58 (Tex.Crim.App. 1987)……………… 7

Ex Parte Duffy, 607 S.W.2d 507 (Tex.Crim.App. 1980)………………… 6

Ex Parte Walker, 777 S.W.2d 427 (Tex.Crim.App. 1989)……………… 7

Ex Parte Walker, 794 S.W.2d 36 (Tex.Crim.App. 1990)……………… 7

Ex Parte Welborn, 785 S.W.2d 391, 395 (Tex.Crim.App. 1990)……….. 11

Garrett v. State, 632 S.W.2d 350, 353-54 (Tex.Crim.App.
[Panel Op.] 1982)……………………………………………….. 12-13

Guidry v. State, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999)……………… 12

Hernandez v. State, 726 S.W.2d 53 (Tex.Crim.App. 1986)……………. 7

Hill v. State, 666 S.W.2d 663, 668 (Tex. App.-Houston [1st Dist.] 1984),
aff'd 686 S.W.2d 184 (Tex.Crim.App. 1985)……………………… 7

Hodge v. State, 488 S.W.2d 779 (Tex.Crim.App. 1972)……………… 17

Martinez v. State, 17 S.W.3d 677, 692 (Tex.Crim.App. 2000)……….. 18

Mathews v. State, 635 S.W.2d 532, 539 (Tex.Crim.App [Panel Op.]
1982)………………………………………………………… 12

Mercado v. State, 615 S.W.2d 225 (Tex.Crim.App. 1981)……………7

Mosley v. State, 983 S.W. 2d 249, 259 (Tex.Crim.App. 1998)……….. 18

Myer v. State, 416 S.W.2d 415 (Tex.Crim.App. 1967)…………………. 17-18

Porter v. State, 623 S.W.2d 374, 385 (Tex.Crim.App. 1981)…………… 11

Simms v. State, 848 S.W.2d 754, 757 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd)…………………………………………………………… 7

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)………………………………………………………..... 7

STATUTES                                                        PAGE

Tex. Code Crim.Proc. §36.19……………………………………………    10

Tex. Rule App. Proc. 44.2……………………………………………….    10

Tex.R.App.P. 81(b)(2)……………………………………………………    13

CONSTITUTIONS                                                   PAGE

United States Constitution,  Sixth and Fourteenth Amendments……...    6

Texas Constitution, Article I, Section 10…………………………………    6

NO. 01-15-00342-CR

_____

IN THE

COURT OF APPEALS

FOR THE

FIRST SUPREME JUDICIAL DISTRICT OF TEXAS

HOUSTON, TEXAS

_____

JAMES JESSE HUBBARD, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the District Court
of Galveston County, Texas
405th Judicial District
Cause No. 14CR0848

FIRST AMENDED BRIEF FOR APPELLANT

_____


TO THE HONORABLE COURT OF APPEALS:


Now Comes JAMES JESSE HUBBARD and pursuant to TRAP 38.7, files this First Amended Brief for Appellant. This Brief is Amended due to some facts and authority being inadvertently omitted from the Original Brief.

## STATEMENT OF THE CASE

Appellant was charged by indictment with Robbery. (CR, 6) The case was tried in the 405th District Court of Galveston County, Texas, the Honorable C.G. Dibrell, III, presiding. (RR, 1, 1)

The jury found appellant guilty. Appellant pled true to the two enhancements and the trial court assessed punishment at forty (40) years in the Institutional Division of the Texas Department of Criminal Justice. (RR 5, 24) Appellant timely filed Notice of Appeal. (CR Supp., 7)

## ISSUE PRESENTED

Appellant received ineffective assistance of counsel at the guilt-innocence phase of trial in two ways:

1) by trial attorney not objecting to prejudicial statement by the detective that she "knew" appellant and was "familiar" with appellant.

2) by trial attorney not objecting to prosecutor's prejudicial statements that appellant had a "drug habit" and was "on drugs" despite nothing in the record to support such statements.

1

## SUMMARY OF FACTS

On February 27, 2015, the complainant, Robert Robinson, attended Mardi-Gras in Galveston, Texas. (RR 3, 21) Mr. Robinson went to the Crow's Bar on the Strand where he met appellant who was sitting at the bar eating. (RR 3, 24) Mr. Robinson testified that he bought appellant a beer and they talked for about an hour. (RR 3, 25 – 26) Mr. Robinson testified that he had about two beers with appellant at the bar. (RR 3, 26) After spending about one to two hours with appellant inside the bar, they both go outside to the patio and smoke cigarettes. (RR 3, 28) Mr. Robinson further testified that he and appellant both drank some more beer on the patio and at this point had consumed approximately five beers. (RR 3, 28) Mr. Robinson testified that he opened his wallet in front of appellant when he purchased the beers. (RR 3, 30) They left the bar and began walking along the Strand and appellant borrows Mr. Robinson's cell phone to call his girlfriend. (RR 3, 30 – 31) Approximately forty-five minutes to an hour after they left Crow's bar, they then go into a convenience store called Bob's Grocery where Mr. Robinson buys two packs of cigarettes. (RR 3, 31 - 32) Mr. Robinson testified that after leaving Bob's Grocery they proceed to walk down the

2

street and about a block later appellant "coldcocks" him. (RR 3, 32) Mr. Robinson further testified that he ran away, tripped over a curb and appellant came up to him and starting beating on him. (RR 3, 34) Mr. Robinson testified that appellant grabbed his wallet and made a "beeline for it" and ran behind a church. (RR 3, 34) Mr. Robinson then crawled across the street and hid behind a wall where he called his dad to pick him up and went to the hospital the next morning. (RR 3, 35 - 36)

Mr. Robinson's father, Fred Robinson testified that his son called to pick him up and the next day they called the police. (RR 3, 100 – 101)

Appellant's wife, Lisa Gutierrez, testified that appellant called her the night of February 27, 2014 and said that he was helping someone find his truck. (RR 3, 107 – 108) Ms. Gutierrez testified that appellant arrived home at approximately 4:00 a.m. (RR 3, 110)

Officer Christopher McNeil of the Galveston Police Department testified that he was dispatched to University of Texas Medical Branch Emergency Room and met with Mr. Robinson who gave a description of his attacker. (RR 4, 16) Officer McNeil then went to the Crow's Bar to talk with the employees who said the description that was given by Mr. Robinson matched the description of appellant. (RR 4, 16)

Detective Michelle Sollenberger met with Mr. Robinson who gave her a

description of the person who robbed him. (RR 4, 36). Detective Sollenberger testified that she "knew" and was "familiar" appellant. (RR 4, 37, 39) Mr. Robinson then showed the detective a phone number that was dialed from his phone by appellant. (RR 4, 38 – 39; State's Exhibit # 7) Detective Sollenberger researched the phone number in State's Exhibit # 7 and it came back belonging to Lisa Gutierrez who was appellant's girlfriend. (RR 4, 39) Detective Sollenberger created a photo array that contained appellant's photo. (RR 4, 45 – 46; State's Exhibit # 9) Detective Sollenberger testified that Mr. Robinson picked appellant out of the photo array and that he was "absolutely confident" in his selection. (RR 4, 45; State's Exhibit # 9)

The Charge of the Court was read to the jury. (RR 4, 69) During the state's closing argument, the prosecutor referred to appellant as having a "drug habit" and was on "drugs." (RR 4, 78, 90 & 94)

On February 24, 2015, the jury found appellant guilty of Robbery. (RR 4, 95) Appellant elected for the trial court to assess and requested that a Pre-Sentence Investigation be prepared. (RR 4, 96)

On March 27, 2015, the punishment trial was had before the court where appellant pled true to the two enhancement paragraphs. (RR 5, 6) At punishment, the State introduced into evidence four prior felony judgments

4

and two prior misdemeanor judgments. (State's Exhibits 1 – 4; 6 – 7)

The trial court assessed punishment at forty (40) years, Institutional Division of the Texas Department of Corrections. (RR 5, 24)

## SUMMARY OF ARGUMENT

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE GUILT-INNOCENCE PHASE OF TRIAL IN TWO WAYS:

1) BY TRIAL ATTORNEY NOT OBJECTING TO PREJUDICIAL STATEMENTS BY THE DETECTIVE THAT SHE "KNEW" APPELLANT AND WAS "FAMILIAR" WITH APPELLANT.

2) BY TRIAL ATTORNEY NOT OBJECTING TO PROSECUTOR'S PREJUDICIAL STATEMENTS THAT APPELLANT HAD A "DRUG HABIT" AND WAS "ON DRUGS" DESPITE NOTHING IN THE RECORD TO SUPPORT SUCH STATEMENTS.

Appellant was found guilty of Robbery. On direct-examination, Detective Michelle Sollenberger, testified that she "knew" appellant and was "familiar" with appellant. (RR 4, 37, 39) This testimony was prejudicial and irrelevant to any issue at trial. This testimony was prejudicial because it implied that appellant was a criminal and that Detective Sollenberger was familiar with appellant due to his criminal activity. Appellant's trial counsel did

not object to this prejudicial testimony. (entire record) By trial counsel not objecting to this testimony by Detective Sollenberger, appellant received ineffective assistance.

Additionally, during closing arguments in the guilt-innocence phase of trial, the prosecutor, stated, without objection, that appellant had a drug habit and was on drugs despite there not being any evidence in the record to support such statements.

## ARGUMENT IN SUPPORT OF APPELLANT'S ISSUE

Under the Sixth Amendment to the United States Constitution as made applicable to the states by the Fourteenth Amendment, *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed. 333 (1980), and by the "Right to be heard" provision of Article I, Section 10 of the Bill of Rights of the Texas Constitution, *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App. 1980), defendants are entitled to effective assistance of counsel in criminal cases whether counsel is retained or appointed.

With regard to whether the defendant received effective assistance of counsel at the guilt-innocence phase of trial and at the punishment phase of capital cases, Texas follows the two prong test set out by the United States

Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App. 1986).; *Ex Parte Walker*, 777 S.W.2d 427 (Tex.Crim.App. 1989). That test is (1) whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) whether there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

In reviewing an attorney's assistance, a court must examine the totality of the representation. *Ex Parte Walker*, 794 S.W.2d 36 (Tex.Crim.App. 1990); *Ex Parte Cruz*, 739 S.W.2d at 58 (Tex.Crim.App. 1987). Counsel need not be errorless and should not be judged by hindsight but must be reasonably likely to render effective assistance. *Mercado v. State*, 615 S.W.2d 225 (Tex.Crim.App. 1981).

"Matters of trial strategy will be reviewed only if an attorney's actions are without any plausible basis." *Brown v. State*, 866 S.W.2d at 678, citing *Hill v. State*, 666 S.W.2d 663, 668 (Tex. App.-Houston [1st Dist.] 1984), aff'd 686 S.W.2d 184 (Tex.Crim.App. 1985) and *Simms v. State*, 848 S.W.2d 754, 757 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd).

1.	Detective Sollenberger's statements that she knew and was familiar with appellant:

On direct-examination, the prosecutor elicited the following testimony from Detective Michelle Sollenberger:

Q.	And who did you believe the suspect to be?

A.	James Hubbard.

Q.	Do you see that person in the courtroom today?

A.	I do.

Q.	Can you point to him and identify an article of clothing?

A.	He's the gentleman sitting at the defense table with a beard and a white shirt.

MR. HENDERSON:	Your Honor, will the record reflect that the witness has identified the defendant.

THE COURT: All right.

Q.	(By Mr. Henderson) And so at that point why did you think the defendant was the person who robbed Mr. Robinson?

A.	I knew the defendant.	(RR 4, 37)

Appellant's attorney failed to make an objection to the prosecutor's prejudicial and improper questioning of Detective Michelle Sollenberger regarding the detective knowing appellant. Consequently, trial counsel

8

failed to move for a mistrial. (entire record)

Additionally, on direct-examination the prosecutor elicited the following the testimony from Detective Sollenberger:

Q. And was that phone number associated with anyone in particular?

A. It was.

Q. Who was it associated with?

A. Lisa Gutierrez.

Q. And did you know Lisa Gutierrez?

A. I did.

Q. And were you familiar with anyone who Lisa Gutierrez was dating or with?

A. I was.

Q. And who was that person?

A. James Hubbard.          (RR 4, 39)

This testimony from Detective Sollenberger was prejudicial and irrelevant to any issue at trial. This testimony was prejudicial because it implied that appellant was a criminal and that Detective Sollenberger was familiar with appellant due to his criminal activity

To not object to these prejudicial statements was ineffective assistance

of counsel, which was harmful to appellant and it surely cannot be construed as any trial strategy. What possible strategy could be involved in the jury hearing, during guilt-innocence, that the detective investigating this robbery knew appellant.

TRAP, Article 44.2, states in relevant part:

(a)    Constitutional Error: If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b)    Other Errors: Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

In order for an appellant to win a reversal without an objection being made at the trial level, the appellant must show egregious harm. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984)*.*   Even if this Court determines that this error should be analyzed and controlled by Tex. Code. Crim. Proc., Art. 36.19 and *Almanza*, *supra 171,* this error was so egregious to appellant and created such harm as to deny the appellant a fair and impartial trial.

It is well settled in Texas that an accused shall not be tried for some

collateral crime or for being a criminal generally. *Porter v. State*, 623 S.W.2d 374, 385 (Tex.Crim.App. 1981), cert. denied, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). Because our concern that an accused not be tried for some collateral crime or for being a criminal generally, testimony concerning an extraneous offense is admissible only in limited circumstances. *Ex Parte Welborn*, 785 S.W.2d 391, 395 (Tex.Crim.App. 1990).

Appellant's trial counsel did not object or even try to keep out these two statements by Detective Sollenberger. Appellant's attorney failing to object to these statements during the guilt/innocence phase of the trial was ineffective assistance that did contribute to his conviction.

2.  Prosecutor's Closing Argument that appellant had a drug habit and was on drugs:

During closing arguments in guilt-innocence, the prosecutor argued outside the record and evidence without any objection from trial counsel. This argument established a motive for appellant to commit this crime of robbery.

The purpose of closing argument is to facilitate the jury in properly

analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. 1980)

The four permissible areas of jury argument are (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to the argument of opposing counsel; and (4) plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999). Appellant contends the prosecutor's argument fell outside the permissible areas of jury argument.

When an argument exceeds the permissible bounds of the above areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App [Panel Op.] 1982).

The test to determine whether improper jury argument is harmless error is not whether a conviction could have been had without the improper argument, but whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Garrett v. State*, 632 S.W.2d 350, 353-54 (Tex.Crim.App. [Panel

12

Op.] 1982); Tex.R.App.P. 81(b)(2). In making this determination, the appellate court must review the evidence at the guilt-innocence stage as well as that adduced at the punishment phase of the trial. *Garrett v. State*, 632 S.W.2d at 353-54

The prosecutor, in his closing statement stated:

"Now, defense counsel wants to make this case about alcohol, but ladies and gentlemen of the jury, this case not about alcohol. It's about drugs. It's about the defendant's habit. It's about his wife's habit and it's about the need to feed that habit and it's really about easy targets." (RR 4, 77)

Additionally, the prosecutor, further stated in his closing argument:

"He forgot about the cell phone. He forgot about Laura and Frank, and when you're on drugs, you tend to do these things. You tend to not think about the consequence of your actions. You don't think about, oh, I'm scared of getting caught from this criminal episode. You're thinking about your next score." (RR 4, 93)

Again, the prosecutor re-emphasized in his closing argument:

"Members of jury, he wasn't getting paid money for a drug habit. He was getting paid in food; and the little money that he did pick up here and

there, he used for drugs for not only Lisa but himself." (RR 4, 94)

The trial court, in the Courts Charge, instructed the jury regarding extraneous offenses as follows:

"You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any other purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed; and even then, you may only consider the same in determining his intent or plan in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose." (RR 4, 72)

Despite there being no evidence regarding appellant using drugs, the prosecutor apparently wanted the jury to believe that appellant was a drug addict, to attempt to show a motive, intent or plan.

Lisa Gutierrez testified on direct-examination for the state:

A. I was very strung out on drugs, sir.
Q. When James came home that day, did he ask you for anything?
A. No, he just asked me to use my phone.
Q. So he asked you for your cell phone. Why did he want your cell phone?
A. Well, I suppose to take care of my habit.

14

Q. To take care of your habit?

A. Yes, sir, he took care of me very well.

Q. So you said, "your habit." How was he going to take care of your habit?

A. He had a job.

Q. How was he going to take care of your habit that night?

A. I don't know, sir. I don't take care of him. I don't ask him any questions. I just know he gets me what I need.

Q. What were you needing that night?

A. I was sick that night, sir, very sick. I told you I had been sick all day so he brought me food.

Q. Well, let's talk about -- what did you mean when you said, "to take care of your habit"?

A. Well, I mean, if I needed drugs, he would make sure that he worked to get it for me.

Q. What kind of drugs are you referring to?

A. I was very strung out on crack cocaine.

Q. Did James use crack cocaine during that time?

A. No, sir, not that I know of.        (RR 3, 109 – 110)


Lisa Gutierrez further testified on direct examination as follows:


Q. And you stated that James worked at Crow's bar?

A. Yes, sir.

Q. About how long did he work there, not exact dates but about how long?

A. Well, I would say about three weeks to a month prior, I guess.

Q. So a very short period of time?

15

A. Yes, sir.

Q. And when we say, "work there," James doesn't clock in and clock out like a normal employee that has a W-2, correct?

A. I don't know, sir.

Q. And when James brings you food home from this bar, does he pay for that food, to your knowledge?

A. I don't know, sir.

Q. You just know that he brings food home when he comes home from work?

A. Whenever I say, "Daddy, I'm hungry," he gets me food.

Q. And you know that James 09:40:06 gets that food free from Crow's bar, correct?

A. I don't know if it's free. I don't know how he pays for it. I figured that since he worked there that, yeah, he probably got a percentage off or something. I don't know, sir.

Q. In fact, you know that's how James gets paid. He gets paid with food and drinks, correct?

A. No, sir. You're not allowed to drink at the club for one thing if you're working. I would imagine that. And no, no, he wouldn't work for food and drinks.

Q. Well, did you guys pay rent any place?

A. No, sir.

Q. So can you explain to the jury what your expenses were during that time?

A. I was a dope addict, sir.

Q. Were you doing these drugs by yourself?

16

A. Yes, sir.

Q. You want this jury to believe that you were -- you had a habit and you were the only person doing drugs around you?

A. Sir, I can just tell you what I know is true, that I do the dope. James –

MR. HENDERSON: I'll pass the witness, your Honor.

MR. BROWN: Was she finished answering the question?

RECROSS-EXAMINATION BY MR. BROWN:

Q. You want to finish answering that question?

A. I just want to say, sir, that I never seen James smoke crack or meth or anything like that. I am the dope addict in our family.

MR. BROWN: I don't have any further questions, Judge.

(RR 3, 122 – 123)

It is the duty of counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App. 1973)

One of the most important factors in determining whether the argument creates reversible error is in the effect it has on the jury. *Hodge v. State*, 488 S.W.2d 779 (Tex.Crim.App. 1972); *Brown v. State*, 475 S.W.2d 761 (Tex.Crim.App. 1972); *Myer v. State*, 416 S.W.2d 415

17

(Tex.Crim.App. 1967).

The prosecutor's argument constituted error and such error was not harmless. The error here rises to the level of constitutional error. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App. 2000). In such cases, determining harm requires a balancing of the following factors: (1) severity of the misconduct (the magnitude of the prejudicial effect caused by the State's improper jury argument), (2) curative measures (the effectiveness of any cautionary instruction given by the trial court), and (3) certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley v. State*, 983 S.W. 2d 249, 259 (Tex.Crim.App. 1998).

Trial counsel was ineffective for not objecting to the prosecutor's closing argument and this, surely, could not be construed as trial strategy. It is difficult to imagine what possible "plausible basis" trial counsel would have for failing to object to the prosecutor's closing argument that appellant had a "drug habit" and was "on drugs."

The prosecutor's argument was extreme and injected new facts into the case that were harmful to appellant. There was no evidence that appellant used drugs. In fact, the only evidence that was produced regarding

18

drug use was the exact opposite: that he didn't use drugs.

The prosecutor committed reversible error in arguing to the jury that appellant had a drug habit and was on drugs and said argument injected harmful facts and was not based upon the evidence in the case.

Allowing the prosecutor to state that appellant had a "drug habit" and was "on drugs" provided the prosecutor with a clear motive to commit this robbery and was extremely prejudicial to appellant.

Additionally, appellant's attorney failed to make an objection to the prosecutor's prejudicial and improper questioning of Detective Sollenberger regarding regarding knowing and being familiar with appellant. Consequently, trial counsel failed to move for a mistrial. (entire record)

Appellant received ineffective assistance of counsel by trial counsel not objecting to the prosecutor's closing argument that appellant had a drug habit and by not objecting to the statements made by Detective Sollenberger that she was "familiar" with appellant.

## CONCLUSION AND PRAYER

WHEREFORE PREMISES CONSIDERED, appellant prays that the judgment of the trial court be reversed and judgment of acquittal be entered or in the alternative that appellant will be granted a new trial or that appellant's sentence will be set aside and for such other and further relief to which appellant may be justly entitled.

RESPECTFULLY SUBMITTED,

/s/     Greg Russell
Greg Russell
Attorney for Appellant
711 59th Street
Galveston, Texas 77551
(409) 497-4743
(409) 497-4721 Fax
SBN: 17411550

## CERTIFICATE OF SERVICE

As Attorney of Record for Appellant, I do hereby Certify that a true and correct copy of the above and foregoing document was this date provided to the Attorney for Appellee, by email/e-file service to Mr. Jack Roady, District Attorney of Galveston County at the offices of the District Attorney of Galveston County, Texas, 600 59th Street, Galveston, Tx. 77551, on the 4th day of December 2015.

/s/     Greg Russell
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I do hereby certify that this brief is in compliance with rule 9.4(i) of the Texas Rules of Appellate Procedure because it is computer generated, and its relevant portions contain 4573 words.

/s/     Greg Russell
Attorney for Appellant