

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00677-CR

Mark P. **HOWERTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CR-2399
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice
Concurring Opinion by: Velia J. Meza, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Lori Massey Brissette, Justice
                Velia J. Meza, Justice

Delivered and Filed: July 23, 2025

AFFIRMED

Appellant Mark Howerton was convicted of aggravated assault after his girlfriend, Cayley

Mandadi, died on October 29, 2017. On appeal of the conviction, which resulted from a second

jury trial after the first ended in a mistrial, Howerton presents the following issues: (1) the evidence

presented at the second trial is insufficient to support his conviction; (2) his second trial was barred

by double jeopardy; (3) the presentation of false testimony of a witness to the grand jury should

have resulted in the dismissal of his indictment; (4) that such presentation of false testimony constituted prosecutorial misconduct which should have prompted the dismissal of the case in its entirety; (5) the petit jury was improperly charged on aggravated assault as a lesser included offense of murder; (6) the trial court erred in excluding various defense exhibits; and (7) the trial court abused its discretion in failing to dismiss the case for violations of Article 39.14 of the Texas Code of Criminal Procedure. After reviewing the record and the parties' briefing and considering oral argument, we affirm.

### BACKGROUND

On that fateful night, Mandadi died in a Luling hospital after arriving there in Howerton's car. Upon arrival, a paramedic found Mandadi slumped in the passenger seat, not breathing, without a pulse, mostly naked, bruised, and with blood on the seat underneath her. Howerton told the paramedic and a responding officer that he and Mandadi had attended the Mala Luna music festival in San Antonio earlier that day and both had consumed alcohol and MDMA, commonly known as "ecstasy" or "molly." Efforts to save her were unsuccessful and she was pronounced dead, after which a medical examiner ruled the cause of death homicide and the manner of death complications of blunt force trauma.

A grand jury returned an indictment of Howerton for murder, sexual assault, and kidnapping in 2018. The grand jury heard testimony from Mandadi's former boyfriend, Jett Birchum. In 2019, a second grand jury returned a superseding murder indictment. Birchum did not testify before the second grand jury, but the transcript from the first grand jury proceedings was available to them. The second grand jury's true bill, containing the one count of murder, included four manners and means as follows:

A. Howerton intentionally and knowingly caused Mandadi's death by either striking her with his hand, grabbing and shaking her with his hands causing her head to strike a blunt object, or some other form of blunt force unknown to the grand jury;

B. Howerton, with intent to cause serious bodily injury, committed an act clearly dangerous to human life that caused Mandadi's death, by either striking her with his hand, grabbing and shaking her with his hands causing her head to strike a blunt object, or some other form of blunt force unknown to the grand jury;

C. Howerton committed felony sexual assault, and while in the course or in furtherance of the commission, Howerton committed an act clearly dangerous to human life that caused Mandadi's death, by either striking her with his hand, grabbing and shaking her with his hands causing her head to strike a blunt object, or some other form of blunt force unknown to the grand jury;

D. Howerton committed felony kidnapping, and while in the course or in furtherance of the commission, Howerton committed an act clearly dangerous to human life that caused Mandadi's death, by either striking her with his hand, grabbing and shaking her with his hands causing her head to strike a blunt object, or some other form of blunt force unknown to the grand jury[.]

The first trial was held in December of 2019, but the jury could not reach a unanimous decision. Howerton moved for a mistrial based on a jury deadlock, to which the State did not object, and the trial court granted the motion. When the State demonstrated it intended to try the case again, Howerton filed an application for pretrial writ of habeas corpus based on the assertion of double jeopardy. He also asserted that the use of Birchum's allegedly false statements to obtain the indictment against him constituted egregious prosecutorial misconduct that merited a bar to retrial and a dismissal of the case. The trial court denied relief, on both grounds, and Howerton appealed to this court. We issued an opinion stating in pertinent part:

> Manifest necessity was present to justify the declaration of a mistrial because of jury deadlock, Howerton consented to that mistrial, and Howerton's consent was not a sham. His retrial is, therefore, not barred. Because Howerton's double jeopardy claim fails as a matter of law, we need not weigh in on his contention that the trial court erred when it reached the legal conclusion that no prosecutorial misconduct occurred or abused its discretion in denying his request for an evidentiary hearing in support of his writ of habeas corpus.

*Ex parte Howerton*, No. 04-21-00409-CR, 2022 WL 2135577, at \*5 (Tex. App.—San Antonio June 15, 2022, pet. ref'd) (citing TEX. R. APP. P. 47.1).

The case then proceeded to a second jury trial in 2023. Birchum did not testify at the second trial. After the evidence was presented, the State requested the jury charge include the offense of aggravated assault causing serious bodily injury as a lesser included offense of the murder count set forth in the indictment. The trial court granted that request and the jury found Howerton guilty, not of murder but of aggravated assault. Howerton was sentenced to twenty years confinement, within the range for the second-degree felony of aggravated assault causing serious bodily injury.

## SUFFICIENCY OF THE EVIDENCE

First, Howerton argues the evidence was insufficient to prove he was guilty of aggravated assault causing serious bodily injury. Specifically, Howerton contends no rational jury could have found Howerton committed an act of assault or harbored the requisite mental state to support a conviction.

### A. Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence, we will consider the evidence in the light most favorable to the verdict to determine whether a rational juror could have found Howerton guilty beyond a reasonable doubt based on proof of the essential elements of the offense charged. *Baltimore v. State*, 689 S.W.3d 331, 341–42 (Tex. Crim. App. 2024). We will not disturb the trier of fact's full responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences based on the evidence presented. *Id*. Jurors are permitted to draw reasonable inferences from the evidence presented at trial, so long as each inference is supported by evidence. *Id.* They "may use common sense, common knowledge, personal experience, and observations from life when drawing those

inferences." *Id.* They are not allowed, however, to come to conclusions based on speculation. *Id.* When determining sufficiency, we will compare the evidence presented to the essential elements of the offense as defined by a hypothetically correct jury charge. *Id.* at 341. A hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense." *Id.*

A person commits aggravated assault if he "commits assault as defined in § 22.01" and "causes serious bodily injury to another." TEX. PEN. CODE § 22.02. "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46); *see also Tucker v. State*, 274 S.W.3d 688, 690–91 (Tex. Crim. App. 2008). "In a prosecution for aggravated assault, the State need only prove the defendant harbored a culpable mental state as to the underlying assault." *Rodriguez v. State*, 538 S.W.3d 623, 631 (Tex. Crim. App. 2018). A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PEN. CODE § 22.01.[1] Thus, based on these statutory elements and the charging instrument, the hypothetically correct jury charge in this case would allege Howerton intentionally, knowingly, or recklessly caused bodily injury to Mandadi, and the bodily injury created a substantial risk of death or caused death, serious permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ. *See* TEX. PEN. CODE §§ 22.02, 22.01, 1.07(a)(46); *see Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023), reh'g denied

---

[1] Here, the jury charge did not include "recklessly," but when assessing sufficiency, the evidence presented at trial should be measured against a hypothetically correct jury charge, not the jury charge used at trial. *See Baltimore*, 689 S.W.3d at 341 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

(Feb. 15, 2023) (laying out elements of a hypothetically correct jury charge in aggravated assault case).

### B. The Evidence Presented at Trial

At trial, the State presented evidence of the volatile nature of the relationship between Mandadi and Howerton. Morgan Sampson, Mandadi's close friend and roommate at Trinity University, testified that in late September 2017, just a few weeks prior to the music festival, she witnessed Howerton grab Mandadi around the shoulders and push her up against the wall, an act which frightened and panicked Sampson. Sampson explained Howerton was upset after she invited Mandadi to join her at a Lancer fraternity house party, a fraternity where Birchum—Mandadi's ex-boyfriend—was a member. Howerton told Mandadi she could not attend. Mandadi did, however, attend the party with Sampson. At the party, Sampson saw on Mandadi's phone multiple missed calls from Howerton and Mandadi told Sampson she thought Howerton was either trashing their dorm room or was going to do something to the room. According to Sampson, when Mandadi returned to her dorm room after the party, the police were there, the dorm room "had been completely trashed and ransacked," and Mandadi's clothes had been thrown off the balcony.

Joe Goodwin also testified he saw Mandadi at the same Lancer fraternity party and corroborated that Mandadi's ex-boyfriend Birchum was a member of the Lancers. He testified that he also saw on Mandadi's phone that she had received several calls and text messages from Howerton. Goodwin testified that after Mandadi answered a call from Howerton, Goodwin heard Howerton yelling obscenities at Mandadi. Goodwin stated that after the party, Howerton arrived at the fraternity house with a backpack containing some of Mandadi's belongings, including a

laptop. According to Goodwin, Howerton then angrily took Mandadi's laptop out of her backpack and smashed it on the road, saying "fuck that bitch."

On the day of the festival, October 29, 2017, Goodwin waited with Howerton for Mandadi to arrive so they could all drive together. As they were waiting, Goodwin saw Birchum's truck pull into campus. Mandadi then appeared at the car and Howerton questioned where she had been, but Mandadi did not respond. Goodwin testified that Howerton then said, "that's bullshit," but continued on to the festival. Goodwin testified that when he first saw Mandadi that day, as they made their way to the festival in Howerton's car, she did not have any bruising and was coherent.

Once inside the festival, Howerton told Goodwin that he and Mandadi were going to get drinks. Goodwin witnessed Howerton and Mandadi walking towards the beverage area by the entrance to the festival. But that was the last time Goodwin saw Mandadi. Sampson testified that she tried to call Mandadi on FaceTime after she had left the festival, but Howerton answered, said "she can't talk right now," and hung up. She stated it appeared he was driving a car at the time.

According to Howerton's own statements, he and Mandadi left the festival in his car and were alone in his car until they arrived outside the hospital in Luling. Sharyl Lane, a paramedic employed with the city of Lockhart at the time, testified that when she approached Howerton's vehicle on October 29, 2017, Mandadi was not breathing, she did not have a pulse, and her skin was discolored. Lane testified Mandadi's "top was pulled up and her pants were in the floorboard down by her ankles." Lane further testified that Mandadi was completely in disarray, her hair was a mess, she had bruises, and blood was visible in the front passenger seat beneath her.

Dr. Suzanna Dana, the forensic pathologist who conducted an autopsy on Mandadi testified at trial that she concluded Mandadi's death was a homicide caused by "complications of blunt force face and head trauma." Dr. Dana further stated that because Mandadi had a "large space-

occupying subdural hematoma and she had bruising on her face and both sides to quite a degree, I concluded that this was not accidental, that this was a homicide." Dr. Dana also testified that MDMA does not cause subdural hematomas.

Likewise, Dr. Kimberly Molina, the chief medical examiner at the Bexar County Medical Examiner's Office, testified she independently reviewed medical records, photographs, the autopsy report, and previous trial testimony, and thereby determined the cause and manner of Mandadi's death, reaching the conclusion that Mandadi "died as a result of blunt force injuries to the head." Dr. Molina further testified that her review of the records did not suggest Mandadi became hypertensive as a result of MDMA use to the point that it had any role in her death.

Dr. Jason Wallach, a professor and neuropsychopharmacology researcher testifying on behalf of Howerton, stated that while the majority of subdural hematomas result from a traumatic injury due to blunt force trauma, there are many instances of non-traumatic subdural hematomas and MDMA can cause them. Dr. Wallach testified that there are "a lot of ways to interpret" Mandadi's injuries, and that certain tests which were not performed could have shed further light on whether Mandadi's subdural hematoma could have a non-traumatic origin. However, Dr. Wallach also stated, "there's not a direct report in the medical or scientific literature at this time where MDMA has been associated with a subdural hematoma." Dr. Wallach also testified that he is not a clinician, has never done an autopsy, and has never been involved in identifying a subdural hematoma in a patient.

## C. Analysis

Here, mindful of the standard of review set out above, *see Baltimore*, 689 S.W.3d at 341–42, a comparison of the evidence produced at trial to the essential elements of the offense as defined by the hypothetically correct jury charge shows a rational juror could have found beyond

a reasonable doubt that Howerton intentionally, knowingly, or recklessly caused bodily injury to Mandadi and that the resulting injury was so severe that it caused Mandadi's death. Specifically, a rational juror could have chosen to believe the expert testimony of Dr. Dana and Dr. Molina, both of whom testified that Mandadi died as a result of blunt force trauma. It is undisputed that she left the festival walking on her own and without bruising and was with Howerton alone until she arrived at the Luling hospital bruised, bleeding, and not breathing. Finally, the jurors could have concluded that such trauma was not inflicted by Howerton accidentally, given Howerton's recent volatile behavior and his jealousy towards her ex-boyfriend, particularly given the indication that he believed she may have been with Birchum before joining him for the festival. The evidence is therefore sufficient to uphold Howerton's conviction for aggravated assault. *See* TEX. PEN. CODE §§ 22.02, 22.01, 1.07(a)(46); *Garcia*, 667 S.W.3d at 766.

Howerton's arguments that the evidence was insufficient are unavailing. Howerton first argues the jury's acquittal of the murder charge necessarily means the evidence supporting the aggravated assault charge was insufficient. He argues that by acquitting Howerton of murder, the jury necessarily accepted the defensive theory that Howerton did not commit an assaultive act at all, and Mandadi's injuries were caused by drug-induced hypertension. But, a rational juror could have concluded Howerton intentionally, knowingly, or recklessly caused serious bodily injury, and also held Howerton did not intentionally and knowingly cause Mandadi's death. Likewise, the jury could have concluded Howerton committed aggravated assault, but Howerton did not beyond a reasonable doubt "commit[] an act clearly dangerous to human life," which is an element of felony murder but not an element of aggravated assault. *See Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007) (felony murder elements) (citing TEX. PEN. CODE § 19.02(b)(2)).

Howerton also argues the testimony showed an MDMA overdose could have been the cause of death and the symptoms of an MDMA overdose could explain the blood on the car seat underneath Mandadi. And, he asserts that Dr. Molina's testimony is lacking because she was not personally present at the autopsy and was not involved in the investigation of Mandadi's death. But, we will not act as a "thirteenth juror" in this case. *See Walk Brooks v. State*, 323 S.W.3d 893, 911-12 (Tex. Crim. App. 2010). "It is the province of the jury"—not our court—"to assess the credibility and demeanor of the witnesses." *Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013). And, it is within the province of the jury to determine the weight they give the evidence. *Id.*

Howerton further argues the jury should have considered his own theory of the case, that the two engaged in light choking and slapping during consensual sex, meaning he did not have the *mens rea* required for conviction of aggravated assault. But, the evidence supporting conviction "is not rendered insufficient simply because appellant presented a different version of the events." *Id.* (quoting *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993)) (internal quotation marks omitted). Finally, Howerton argues the State's evidence relied on comes from "a lying, discredited witness through hearsay," namely Birchum. But, Birchum did not testify at the second trial.

Because the evidence presented at trial is sufficient to support the finding of guilty for aggravated assault, and because Howerton's arguments are nothing more than a request for us to re-evaluate the credibility of the witnesses and re-weigh the evidence presented, we overrule this point of error.

## DOUBLE JEOPARDY

In his second issue on appeal, Howerton argues he was twice placed in jeopardy because the State engaged in prosecutorial misconduct by knowingly presenting Birchum's allegedly false

testimony to the second grand jury[2] and by withholding information in emails between investigators and the State until the time of trial. For these reasons, Howerton argues the trial court erred by denying his motion to dismiss for prosecutorial misconduct. CR.211.

### A. Standard of Review and Applicable Law

We review the trial court's denial of Howerton's motion to dismiss for prosecutorial misconduct under an abuse of discretion standard. *Gutierrez*, 419 S.W.3d at 551. However, the scope of the constitutional protection against double jeopardy is a question of law which we review de novo. *See State v. Donaldson*, 557 S.W.3d 33, 40 (Tex. App.—Austin 2017, no pet.) (citing *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999)). As a part of the protection against multiple prosecutions, the Double Jeopardy Clause grants a criminal defendant the right to have his trial completed by a particular tribunal. *Oregon v. Kennedy*, 456 U.S. 667, 671–72 (1982); U.S. CONST. amend. V. But the clause "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Id.* at 672. This is because "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

"Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard first enunciated in Justice Story's opinion in *United States v. Perez*, [22 U.S. 579, 580] (1824)." *Kennedy*, 456 U.S. at 672. But, where the defendant asks for a mistrial, as Howerton did here, different principles

---

[2] While Howerton contends that the prosecution presented Birchum's trial testimony to the second grand jury, the record reflects that the first trial did not occur until after the second grand jury returned the superseding indictment of murder on four different manners and means. Thus, at the time of the second grand jury, Howerton had not yet been tried, and the petit jury had not been empaneled and sworn, so jeopardy had not yet attached. *See State v. Moreno*, 294 S.W.3d 594, 597 (Tex. Crim. App. 2009) (stating jeopardy must have initially attached before double-jeopardy protections are implicated and explaining when jeopardy attaches).

come into play. *Id.* "A defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Id.* at 676 (internal quotation marks omitted). Nevertheless, there is a narrow exception that will bar a second trial after a defendant's requested mistrial, specifically "in those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Id.* at 679. Under both the Texas and U.S. constitutions, double jeopardy bars a retrial only if the prosecutor commits manifestly improper conduct with the intent to provoke the defendant into moving for a mistrial. *Ex parte Lewis*, 219 S.W.3d 335, 337 (Tex. Crim. App. 2007) ("the proper rule under the Texas Constitution is the rule articulated by the United States Supreme Court in *Oregon v. Kennedy* [456 U.S. 667 (1982)]."); U.S. CONST. amend. V; TEX. CONST. art. I, § 14. As the Court of Criminal Appeals further explained:

> "Where the prosecutor's actions are engaged in with the intent to persuade the factfinder to convict, instead of acquit, there is no double jeopardy violation under the Fifth Amendment. This is true even if the conviction is due in part to reversible errors, including intentional misconduct on the part of the State. . . . Only where the prosecutor's intentional, and deliberate misconduct goads the accused into moving for a mistrial—and that motion is granted—is the accused's right to be tried to verdict by the first tribunal, a right afforded him by the double jeopardy clause of the Fifth Amendment, violated.

*Ex parte Mitchell*, 977 S.W.2d 575, 579–80 (Tex. Crim. App. 1997).

### B. Application

In this court's prior review of this case, on Howerton's application for pretrial writ of habeas corpus, we noted that Howerton does not allege that the prosecution committed acts at trial that caused him to request a mistrial. *See Lewis*, 219 S.W.3d at 358–59 ("Only when the prosecutor intends to provoke the defendant's mistrial motion can it be said that the prosecutor, rather than the defendant, has exercised primary control over the decision to seek the trial termination."). In fact, it was simply a hung jury. We, therefore, previously held Howerton's retrial was not barred

by the Double Jeopardy Clause since there was a jury deadlock, Howerton consented to and—in fact—requested the mistrial, and his consent was not a sham. *Howerton*, 2022 WL 2135577, at \*5.

Now, as he presents this issue for the second time to this court, Howerton still does not allege that the State caused him to move for mistrial. Instead, he first argues the State engaged in prosecutorial misconduct by knowingly presenting false prior testimony to the second grand jury. But, as noted above, at the time the second grand jury considered the case and returned the indictment, the first trial had not yet occurred,[3] and jeopardy had not yet attached. *See State v. Moreno*, 294 S.W.3d 594, 597 (Tex. Crim. App. 2009). Secondly, he argues the State withheld information from Howerton until the time of trial. But, again, this does not in any way lead us to the conclusion that Howerton's request for mistrial due to a hung jury was somehow evidence that his hand was forced by the State's actions.

We see no reason to depart from our previous ruling, in which we held Howerton's double jeopardy claim fails as a matter of law. *Howerton*, 2022 WL 2135577, at \*5; *see Howlett v. State*, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999) (explaining that the "law of the case" doctrine provides "that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal."). We decline to expand double jeopardy claims to include claims based on prosecutorial misconduct when a defendant has freely requested a mistrial based on jury deadlock because there is no double jeopardy violation in such circumstances as a matter of law. *See Mitchell*, 977 S.W.2d at 579–80 (explaining no double jeopardy violation when prosecution engaged in misconduct with intent to convict rather than goad defendant into moving for mistrial). Furthermore, as discussed *infra*, we

---

[3] As discussed in our court's prior review of this case, Birchum's testimony to the first grand jury, not his trial testimony, occurred before the second grand jury. *See id.* at \*1–2.

hold the trial court did not abuse its discretion when it determined there was no prosecutorial misconduct here. Howerton's second issue is overruled.

MOTION TO DISMISS THE INDICTMENT

Further, Howerton argues the trial court erred in denying his motion to dismiss the indictment due to the State intentionally and knowingly presenting allegedly false evidence to the second grand jury, namely Jett Birchum's testimony to the first grand jury. Howerton also argues the State failed to present the second grand jury with exculpatory evidence such as testimony and cell phone records which would have purportedly shown the second grand jury that Birchum's testimony before the first grand jury was false.

### A. Standard of Review and Applicable Law

We review the trial court's denial of Howerton's motion to dismiss under an abuse of discretion standard. *Gutierrez v. State*, 419 S.W.3d 547, 551 (Tex. App.—San Antonio 2013, no pet.) (citing *Rogers v. State*, 113 S.W.3d 452, 459 (Tex. App.—San Antonio 2003, no pet.)). "A trial [court] abuses [its] discretion when [its] decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

It is inviolate that grand jury proceedings are secret. TEX. CODE CRIM. PROC. art. 20A.202(a). "Texas law, following that established by the Supreme Court, provides that a reviewing court will not go behind the actions of the Grand Jury to determine whether the indictment was properly returned." *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex. Crim. App. 1990). "'It would run counter to the whole history of the grand jury institution' to permit an indictment to be challenged 'on the ground that there was inadequate or incompetent evidence before the grand jury.'" *United States v. Williams*, 504 U.S. 36, 54 (1992) (quoting *Costello v.*

*United States*, 350 U.S. 359, 364 (1956)). "'[T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment,' and [] 'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard." *Id.* (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988)). Review of facially valid indictments on the grounds that the prosecutor's presentation to the grand jury was incomplete or misleading "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]." *Id.* at 54–55 (quoting *Costello*, 350 U.S. at 364) (internal quotation marks omitted).

### A. Analysis

Howerton contends that the State procured the second grand jury indictment by knowingly presenting the false testimony of Birchum. But, at most there is an issue regarding the credibility of the testimony and the weight to be given to it. Specifically, Birchum first reported the matter to the police the night of the festival when Mandadi did not return to her dorm room, and he could not reach her on her cell phone. At the time, Birchum reported that he had seen Howerton and Mandadi at the festival and witnessed Howerton physically pick Mandadi up, put her into his car, and drive away. But, in later statements, Birchum admitted his initial report was inaccurate and corrected himself by stating that he had seen the couple at the festival, but only from afar, that he could tell Howerton was angry and Mandadi was upset, that he saw Howerton grab Mandadi and walk her in the direction of the exit, and that he tried to follow them but lost them in the crowd. He also stated that he called Mandadi's phone "very shortly" after seeing them and Howerton answered, told him Mandadi was his, and warned him to leave her alone.

According to Howerton, cell phone records established Howerton never entered the music festival and could not have been seen by Birchum. Howerton's testifying expert David Gallant, a

digital forensics consultant, testified at the hearing on the motion to dismiss that Howerton's phone was on a road next to the stadium from 3:43pm to 3:46pm but never appeared to be inside the festival grounds. He further testified that Birchum's phone placed him at the music festival several hours later, at 7:39pm and 8:51pm, by which time Howerton's phone was near Trinity University almost ten miles away. But, on cross-examination, Gallant acknowledged that the data showed only that *their phones* were never together at the festival, and that given he had no location data from Howerton's phone in the late afternoon to early evening hours, Howerton's phone could have simply been off. More importantly, Goodwin testified and Howerton admitted to police on at least three occasions that Howerton did in fact enter the music festival with Mandadi.

We detail the evidence here only to demonstrate the reasonableness of the trial court's ruling that Birchum's testimony was not proven to be false. Thus, the record does not establish that the State intentionally presented evidence *it knew to be false* to the grand jury. Further, the failure to present the cell phone records to discredit Birchum's prior testimony is not something that will disturb the indictment. *In re State*, 516 S.W.3d 526, 528 (Tex. App.—San Antonio 2016, no pet.) (stating prosecutors have no duty to present exculpatory evidence to grand jury).

But, while it is important to demonstrate that the record does not establish that the State knowingly presented false testimony to the grand jury, it is even more important for us to preserve the sanctity of the grand jury proceedings and refuse to disturb an indictment based on an allegation that some of the testimony provided may be questioned. *See DeBlanc*, 799 S.W.2d 701, 706; *Williams*, 504 U.S. at 54. For that reason, we overrule this point of error.

### LESSER-INCLUDED OFFENSE

Howerton further argues, as he did in his motion for new trial, that the jury was improperly charged on the offense of aggravated assault causing serious bodily injury. When the State requests

the jury be charged with a question on an offense that was not included in the indictment, the only question is whether the offense is actually a "lesser included offense" of the originally indicted offense. *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009).[4]

This requires the court to use the "cognate pleadings" approach to determine if an offense is a lesser-included offense of another offense. *See Ex parte Watson*, 306 S.W.3d 259, 271 (Tex. Crim. App. 2009). This test is met if the indictment for the greater-inclusive offense either: "(1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Id.* at 273.

This is a question of law which we review de novo, and it does not depend on the evidence to be produced at trial. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *also Hall v. State*, 225 S.W.3d 524, 532–36 (Tex. Crim. App. 2007) (performing analysis on the pleadings rather than the evidence ensures the defendant had notice of all allegations against him prior to having to mount a defense). "Were the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, [the defendant's] right to notice would be placed in jeopardy." *Id.* at 532 (quoting *Schmuck v. United States*, 489 U.S. 705, 718-19 (1989) (internal quotation marks omitted)).

Here, Howerton was ultimately found guilty of aggravated assault causing serious bodily injury, which contains the following elements: (1) the person "commits assault as defined in §

---

[4] Howerton also suggests that the aggravated assault charged was not a proper lesser-included offense here because there is no evidence that if Howerton is guilty, he is guilty only of the aggravated assault charged, citing *Creel v. State*, 754 S.W.2d 205, 211 (Tex. Crim. App. 1988). But in *Creel*, the defendant—not the State—requested a jury charge instruction on a lesser-included offense, and the Court of Criminal Appeals analyzed the second prong, which does not apply when the State is the party requesting a lesser-included offense instruction. *See id.* at 210–12; *Grey*, 298 S.W.3d at 645.

22.01" and (2) the person "causes serious bodily injury to another." TEX. PEN. CODE § 22.02. Assault requires proof that a person "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PEN. CODE § 22.01. The jury charge in the second trial stated that a person commits an assault if the person "intentionally or knowingly causes bodily injury to another," leaving out "recklessly."

The true bill of indictment alleged Howerton committed murder by four manners or means. In the first manners or means, set forth in paragraph A, it was alleged that "Howerton intentionally and knowingly caused Mandadi's death by either striking her with his hand, grabbing and shaking her with his hands causing her head to strike a blunt object, or some other form of blunt force unknown to the grand jury." Therefore, the indictment did set forth all of the required elements of aggravated assault causing serious bodily injury. *See* TEX. PEN. CODE § 22.02. Paragraph A of the murder count put Howerton on notice that he would need to defend against allegations that he had intentionally or knowingly caused bodily injury to Mandadi and that she had suffered serious bodily injury as a result. *See id*.

Howerton argues without supporting authority that the State needed to elect one of the manners and means alleged in the indictment to be entitled to the lesser-included offense instruction. We decline here to adopt this novel and unsupported restriction on the State's ability to request a lesser-included offense instruction. The indictment alleged murder by four manners or means, and aggravated assault is a proper lesser-included offense of one of the manners or means alleged. *See Hall*, 225 S.W.3d at 531 (explaining that "when the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses."); *Watson*, 306 S.W.3d at 273.

Howerton's challenge to the lesser-included offense instruction is overruled.

**EXCLUSION OF DEFENSE EXHIBITS**

Howerton also argues on appeal that the trial court erred in excluding Defense Exhibits 12, 12b, 12c, 19,[5] 28, 29, and 30, which contain text messages between Birchum and Mandadi, a Facebook photo depicting Birchum choking Mandadi, and video screen shots of Birchum and Mandadi engaging in sexual activity. Howerton argues these excluded exhibits undermine the credibility of Birchum, who did not testify at trial, and support Howerton's theory of the case. He contends their exclusion violated his rights under the confrontation clause and the due process clause of the United States and Texas constitutions.

**A. Standard of Review and Applicable Law**

We review a trial court's decision to exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles.'" *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021) (quoting *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016)). We must uphold the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

The erroneous exclusion of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). However, an exception exists when erroneously excluded evidence offered by a criminal defendant forms such a vital portion of the case that its exclusion effectively precludes the defendant from presenting a defense. *Id.* When a trial court

---

[5] Defense Exhibit 19 was admitted.

excludes a defendant's evidence, a due process violation may arise only if: (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) the trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense. *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014); *Walters*, 247 S.W.3d at 219. When this transpires, the standard for constitutional errors under Rule 44.2(a), applies. *Walters*, 247 S.W.3d at 219. In contrast, when the excluded evidence does not prevent a defendant from presenting a defense, but only incrementally furthers a defensive theory, any corresponding error is non-constitutional and the harm standard articulated in Rule 44.2(b) applies. *See id.* at 222.

## A. Analysis

Howerton argues that Defense Exhibits 12, 12B, and 12C undermine Birchum's testimony from the first trial and undermine the State's theory of the case. These exhibits all contain text messages sent between Birchum and Mandadi on October 28 and 29, 2017. At trial, Howerton offered Defense Exhibit 12 in its entirety but the trial court allowed only that portion of the text thread that went to Mandadi's state of mind, excluding other parts that were hearsay or related only to Birchum's state of mind, which the trial court held was irrelevant. The trial court advised that, in the event Birchum's prior testimony was somehow introduced, then the text messages wherein he states that Howerton has Mandadi's phone would be admissible to discredit his testimony regarding his interactions with Mandadi on the night in question. Birchum did not testify at the second trial and the State did not rely on his prior testimony.

We cannot conclude the trial court acted unreasonably or without reference to any guiding rules and principles by excluding Defense Exhibits 12, 12B, and 12C. *See Lerma*, 639 S.W.3d at

68. The text messages were inadmissible hearsay, other than the portions the trial court deemed separately admissible. *See* TEX. R. EVID. 801(d); *Black v. State*, 358 S.W.3d 823, 831–32 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding in part that text messages offered for the truth of the matter asserted were inadmissible hearsay). Their probative value was minimal at most, since the State did not rely on Birchum's version of events to prove its case, never offering any of Birchum's statements for their truth, and relying instead on other evidence to establish Howerton attended the Mala Luna music festival on October 29, 2017, such as Goodwin's testimony and Howerton's own statements to law enforcement. Therefore, the trial court did not abuse its discretion by excluding Defense Exhibits 12, 12B, and 12C. *See Gonzalez*, 544 S.W.3d at 370.

Even assuming without deciding that the exhibits should have been admitted, Howerton's assertion that the trial court's exclusion of the exhibits prevented him from undermining a "key State's witness"—namely Birchum—falls flat given that Birchum did not testify. Beyond that, Howerton had the opportunity to undermine Birchum's credibility during the trial, through the testimony of Trinity University student Dominque Hussain and Ranger Conde Benoist.[6] Howerton also acknowledges he had the opportunity at trial to undermine Birchum's credibility by introducing Defense Exhibit 19, which the trial court admitted, containing a photograph of Birchum smiling at the music festival. Howerton has not shown the excluded text messages were vital to his defense or that their exclusion affected his substantial rights. *See Easley, 424* S.W.3d at 540; TEX. R. APP. P. 44.2.

Howerton also argues that Defense Exhibits 28, 29, and 30 were improperly excluded. Exhibit 28 is a selfie photograph of Mandadi being choked; Exhibit 29 is a screenshot of a video from Birchum's phone depicting him and Mandadi engaging in consensual rough sex involving

---

[6] Hussain testified that Birchum lied to the police when first reporting Mandadi's absence at her dorm, and Ranger Benoist also testified that Birchum told two different stories over time.

choking; and Exhibit 30 is a screenshot of a sexual video showing Mandadi ingesting cocaine off of Birchum's body.

The trial court reasonably excluded Exhibit 28 on the basis that it was cumulative of Defense Exhibit 7, which the trial court admitted. Defense Exhibit 7 is another selfie photograph of Mandadi being choked. The trial court could have reasonably concluded that the admission of Exhibits 29 and 30 would also needlessly present cumulative evidence given the admission of Exhibit 7. See TEX. R. EVID. 403; *Lerma*, 639 S.W.3d at 68. The trial court also could have reasonably concluded the prejudicial or misleading effect of the explicit exhibits would outweigh any probative value. *See Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022) (relevant evidence can be excluded when there is a "clear disparity between its probative value, on the one hand, and its prejudicial or misleading effect, on the other."). Therefore, the trial court did not abuse its discretion by excluding Defense Exhibits 28, 29, and 30. *See Gonzalez*, 544 S.W.3d at 370.

Howerton argues on appeal that these three images "bore directly on the issue of consent, force, and Mandadi's prior behavior." To the extent Howerton is arguing that the images indicate Mandadi's character included a propensity to engage in consensual rough sex, supporting the view that Mandadi acted in conformity with that character trait in the car with Howerton on the day she died, such character evidence is inadmissible. *See* TEX. R. EVID. 404(b)(1); *Valadez*, 663 S.W.3d at 141. Howerton was not convicted of felony murder based on sexual assault, and Howerton has not shown the excluded sexual images were vital to his defense against the aggravated assault charge, or that their exclusion affected his substantial rights, so even if there were any error here, it is not reversible. *See Easley, 424* S.W.3d at 540; TEX. R. APP. P. Howerton's sixth issue is overruled.

**PROSECUTORIAL MISCONDUCT AND ARTICLE 39.14**

In his final issue, Howerton argues the trial court abused its discretion by denying his motion for new trial because his conviction was based on false evidence and prosecutorial misconduct.[7] Specifically, Howerton contends the prosecution engaged in misconduct by presenting Birchum's allegedly false testimony to the second grand jury while failing to provide the evidence that would have shown it was false. Howerton further contends the State wrongfully withheld information in emails between investigators and the prosecution "until the time of trial." He asserts that these acts are in violation of the mandates of Texas Code of Criminal Procedure article 39.14 as well as *Brady v. Maryland*, 373 U.S. 83 (1963) which require the State to disclose exculpatory evidence.

**A. Allegations of Prosecutorial Misconduct**

**1. Standard of Review and Applicable Law**

We review claims of prosecutorial misconduct for an abuse of discretion, "deferring to the trial court's assessment of the facts, including the prosecutor's state of mind," and reviewing the facts in the light most favorable to the trial judge's ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We consider both the facts of the case and the probable effect on the jurors' minds. *Haddad v. State*, 860 S.W.2d 947, 954 (Tex. App.—Dallas 1993, writ ref'd) (citing *Hodge v. State*, 488 S.W.2d 779, 781–82 (Tex. Crim. App. 1972)). The court of criminal appeals has reversed only when (1) the defendant objected to the prosecutor's conduct, (2) the prosecutor's actions deliberately violated an express court order, and (3) the prosecutor's misconduct was so blatant as to border on being

---

[7] As a preliminary matter, Howerton did not preserve these arguments in his motion for new trial. *See* Tex. R. App. P. 33.1. Nevertheless, these arguments were preserved in Howerton's motion to dismiss for prosecutorial misconduct and his first amended motion to dismiss for *Brady* violation.

contumacious. *Id.* (citing *Stahl v. State*, 749 S.W.2d 826, 831 (Tex. Crim. App. 1988); *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985)).

Prosecutorial misconduct may be shown where the prosecutor's conduct is calculated to inflame the minds of the jury. *See Stahl*, 749 S.W.2d at 832. When reviewing whether there was reversible error based on prosecutorial misconduct, we balance three factors: (1) the severity of the misconduct, or the magnitude of its prejudicial effect; (2) any measures implemented by the judge to cure the misconduct; and (3) the certainty of conviction absent the misconduct, or the strength of the evidence supporting the conviction. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

### 2. Analysis

As discussed above, the evidence does not establish that the State intentionally presented evidence it *knew to be false* to the grand jury. Viewing this evidence in the light most favorable to the trial judge's ruling, we conclude that the trial court did not abuse its discretion by rejecting Howerton's argument that the State knowingly provided false testimony to the second grand jury. *See Gutierrez*, 419 S.W.3d at 551; *Ocon*, 284 S.W.3d at 884. Furthermore, while Howerton contends the State failed to present evidence to the grand jury that would have discredited Birchum's testimony, we find no case that would support a duty by the prosecutors to present exculpatory evidence to the grand jury. In fact, we find the contrary. *See In re State*, 516 S.W.3d 526, 528 (Tex. App.—San Antonio 2016, no pet.); *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex. Crim. App. 1990); *United States v. Williams*, 504 U.S. 36, 54 (1992).[8]

### B. Article 39.14

---

[8] We note that Birchum did not testify at the second trial, at which Howerton was found guilty. Yet, even though Birchum did not testify, the jury was able to hear other witnesses testify as to the inconsistencies of his different accounts, including Trinity University student Dominique Huassain and Ranger Conde Benoist, whose testimonies are referenced *supra*.

Howerton also contends the State violated Texas Code of Criminal Procedure article 39.14 by failing to disclose certain email communications until just before trial.

### 1. Standard of Review and Applicable Law

We also review a trial court's ruling on an Article 39.14 discovery motion for an abuse of discretion. *See State v. Heath*, 696 S.W.3d 677, 702 (Tex. Crim. App. 2024); *Briscoe v. State*, 542 S.W.3d 100, 108 (Tex. App.—Texarkana 2018, pet. ref'd). "A trial court abuses its discretion if its decision lies outside of the zone of reasonable disagreement." *Heath*, 696 S.W.3d at 688–89. Article 39.14 provides:

> (a) Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this Code, as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written, or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.
> . . .
> (h) Notwithstanding any other provision in this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

TEX. CODE OF CRIM. PROC. art. 39.14(a), (h).

"The Michael Morton Act is understood to have broadened the State's discovery obligations" beyond its obligations under *Brady*. *Heath*, 696 S.W.3d at 692. The Act makes "disclosure the rule and non-disclosure the exception." *Id.* (quoting *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021)) (internal quotation marks omitted). In fact, the duty to turn over exculpatory or mitigating evidence under subsection (h) exists even where the defendant makes

no request for it. *See* TEX. CODE OF CRIM. PROC. art. 39.14(h); *Heath*, 696 S.W.3d at 695; *see Watkins*, 619 S.W.3d at 277. "Generally speaking, the current version of Article 39.14 removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose." *Watkins*, 619 S.W.3d at 278; *see* TEX. CODE OF CRIM. PROC. art 39.14.

A trial court's violation of Article 39.14 is subject to a harm analysis. *See Watkins*, 619 S.W.3d at 291; *Fortuna v. State*, 665 S.W.3d 861, 869 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Sopko v. State*, 637 S.W.3d 252, 257 (Tex. App.—Fort Worth Dec. 16, 2021, no pet.) (assuming without deciding 39.14 error, concluding error harmless). A violation of Article 39.14 is statutory, non-constitutional error. *See Heath*, 696 S.W.3d at 692 ("According to the plain text of Article 39.14, criminal defendants now have a general statutory right to discovery in Texas beyond the guarantees of due process."); *Watkins*, 619 S.W.3d at 277 (stating same); *Fortuna*, 665 S.W.3d at 869. For non-constitutional error, reversal is only required if the error "affect[s] an appellant's substantial rights—i.e., when they have a substantial and injurious effect or influence in determining the jury's verdict." *Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023); *see, e.g., Valadez v. State*, 663 S.W.3d 133, 147–48 (Tex. Crim. App. 2022). If, after examining the record as a whole, "we have a fair assurance . . . the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). We make this determination by examining: certain "nonexclusive factors": (1) the character of the error and its connection to the other evidence; (2) "the nature of the evidence supporting the verdict"; (3) "the existence and degree of additional evidence indicating guilt"; (4) "whether the State emphasized the complained-of error"; (5) "the trial court's instructions"; (5) the defendant's "theory of the case"; and, if applicable, (6) "relevant voir dire." *Cook*, 665 S.W.3d

at 599.

## 2. Analysis

Howerton argues the State engaged in prosecutorial misconduct and violated *Brady* or Article 39.14 by withholding information in emails between the investigators and the prosecution "until the time of trial" instead of providing these communications "well before the trial." At a pretrial hearing on Howerton's motion to compel production of discoverable evidence, Howerton argued the communications the State had already produced indicated the State possessed additional exculpatory, impeachment, or mitigating documents under Article 39.14 or *Brady* that it had yet to produce. TEX. CODE OF CRIM. PROC. art. 39.14(a), (h); *Brady*, 373 U.S. at 86. Following the hearing, the trial court issued an order granting the motion to compel the day before trial. The State then produced additional email and text communications pursuant to the court's order. Howerton does not point to any specific evidence that the State produced or failed to produce that prejudiced his defense. Instead, he argues the trial court erred by failing to dismiss the case based on the late production of evidence, and that this late production of evidence constituted prosecutorial misconduct.

In order for us to conduct the kind of analysis necessary to determine prejudice, Howerton is first required to articulate which specific communications were untimely produced, how the communications were exculpatory, impeaching, or mitigating, whether Howerton referenced any of these communications when presenting his case at trial, or how the untimely production of any specific communications harmed Howerton's ability to present his defense or injuriously affected the jury's verdict. *See Cook*, 665 S.W.3d at 600. Instead of doing so, Howerton references various exchanges from the hearing on his pretrial motion to compel discussing communications the State

had *already* produced to Howerton before trial, including a communication between Ranger Benoist and an investigator discussing a video dramatization. Howerton acknowledges the video dramatization was excluded. This leaves us wholly unable to analyze the nonexclusive factors set forth in *Cook*. 665 S.W.3d at 599; *see Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999) (holding defendant must "show he was prejudiced by the tardy disclosure of favorable evidence" and that he was unable to put it to effective use at trial). We can, though, look to the sufficiency of the evidence supporting the jury verdict, as outlined above.

Because Howerton has failed to show that any specific evidence, or the late production of such evidence, impacted the trial, the defense, or the verdict, we are left without "a fair assurance" that the late production prejudiced him in his presentation of his defense. *See Gonzalez*, 544 S.W.3d at 373; *see also Gutierrez*, 419 S.W.3d at 551; *Ocon*, 284 S.W.3d at 884; *Heath*, 696 S.W.3d at 702. The record before us fails to provide any reason for us to conclude that any communications between the State and investigators negate the extensive evidence of Howerton's guilt or would have impacted Howerton's theory of the case had they been produced earlier. *See Cook*, 665 S.W.3d at 599. Howerton has thus failed to show harm. We therefore overrule this point of error.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment of conviction.

Lori Massey Brissette, Justice

DO NOT PUBLISH